1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   REBECCA MAZALIN,

12              Plaintiff,                          No. CIV S-10-1445 KJM-CMK

13        vs.

14   SAFEWAY, INC., a corporation,

15              Defendant.                          <u>ORDER</u>

16   _____/

17              This matter comes before the court upon defendant's motion for summary

18   judgment.  (ECF 15.)  Hearing on this motion took place on August 31, 2011; Kara Keister and

19   Sean Gavin appeared for plaintiff and William Murphy and Joe Creason appeared for defendant.

20   For the following reasons, defendant's motion is hereby GRANTED.

21   I.  <u>PROCEDURAL HISTORY</u>

22              Plaintiff filed her complaint in Placer County Superior Court on May 11, 2010

23   alleging eight causes of action: 1) age discrimination in violation of Cal. Gov't Code §§ 12900,

24   *et seq.*, and 12940, *et seq.*; 2) gender discrimination in violation of Cal. Gov't Code §§ 12900,

25   *et seq.*, and 12940, *et seq.*; 3) wrongful termination in violation of Cal. Gov't Code §§ 12900,

26   *et seq.*, and 12940, *et seq.*; 4) retaliation in violation of Cal. Gov't Code §§ 12900, *et seq.*, and

1   12940, *et seq.*; 5) breach of employment contract; 6) breach of the implied covenant of good

2   faith and fair dealing; 7) negligent hiring and retention;[1] and 8) intentional infliction of

3   emotional distress (IIED).  (Not. of Removal, Ex. A, ECF 1-1.)  Defendant removed the action to

4   this court on June 11, 2010.  (ECF 1.)

5          Defendant filed the present motion for summary judgment on July 20, 2011.

6   (ECF 15.)  Plaintiff filed her opposition on August 17, 2011.  (ECF 34.)  Defendant filed its

7   reply on August 24, 2011.  (ECF 46.)

8   II.   PLAINTIFF'S REQUEST TO SEAL (ECF 50)

9          Plaintiff filed a request to seal documents on August 22, 2011 (ECF 43), which

10  was denied on August 30, 2011 (ECF 49).  The court struck paragraph 5 of the protective order

11  (ECF 11), found that there was no good cause for granting plaintiff's request, and instructed

12  plaintiff that the termination list underlying the request would not be considered in connection

13  with the pending motion for summary judgment unless and until it was properly filed in

14  compliance with the Local Rules and paragraph 7 of the protective order.  (ECF 49.)  Instead of

15  properly filing the termination list, on August 30, 2011, plaintiff refiled the same request to seal

16  documents the court had rejected earlier that day.  (ECF 50.)  Accordingly, plaintiff's renewed

17  request to seal documents is DENIED.  The termination list has not been considered by the court

18  in connection with the present motion.

19  III.  UNDISPUTED FACTS

20         On April 15, 2009, plaintiff adjusted the price of a bottle of vodka to half the

21  original price for a customer.  (Def.'s Statement of Undisputed Material Facts ¶¶ 5-7, ECF 17

22  (hereinafter "ECF 17"); Pl.'s Opp'n to Def.'s Statement of Undisputed Material Facts ¶¶ 5-7,

23  ECF 27 (hereinafter "ECF 27").)  The customer's purchase was rung up by Diane Bragg, who

24

25         [1] Plaintiff has voluntarily dismissed claims 5 through 7, for breach of employment
    contract, breach of the implied covenant of good faith and fair dealing, and negligent hiring and
26  retention.  (Pl.'s Opp'n at 17, ECF 34.)

reported the fact that the price had been marked down to Jason Kellogg, the Store Manager, after

the customer had left.  (ECF 17 ¶¶ 8-9; ECF 27 ¶¶ 8-9.[2])  Bragg reported this fact to Kellogg

because she "did not feel right" about it, not because of plaintiff's age or gender.[3]  (Bragg Decl.

¶ 2, ECF 20; Creason Decl., Ex. D, Bragg Dep. at 28:19-22, ECF 18-3; ECF 17 ¶ 11.)  Kellogg

interviewed plaintiff, who admitted she had given the discount and that she had given such

discounts in the past.  (ECF 17 ¶¶ 12-13; ECF 27 ¶¶ 12-13.)

Kellogg suspended plaintiff from her employment as Liquor Department Manager

at Safeway store 1592 on April 15, 2009, and reported the incident to John Gummert, the Loss

Prevention Investigator.  (ECF 17 ¶ 16; ECF 27 ¶ 16.)  Gummert determined that plaintiff had

violated store rules and reported his findings to Terry Friedman, the District Manager.  (ECF 17

¶¶ 21-22; ECF 27 ¶¶ 21-22.)  Friedman ultimately terminated plaintiff's employment on May 21,

2009.  (Def.'s Br. at 10; ECF 17 ¶ 24; ECF 27 ¶ 24.[4])

In a letter dated July 14, 2009, plaintiff's union advised her that "the Company

did in fact have just cause to terminate you. Therefore, your grievance was denied."  (Creason

Decl., Ex. A, Ex. 9 to the Mazalin Dep., ECF 19 at 72.)

/////

/////

/////

---

[2] Plaintiff does not dispute these facts.  Her rebuttal that "Bragg actually rang up the purchase at an even lower price, allowing the customer to use a club card discount" (ECF 27 ¶ 8) is irrelevant, as is her contention that "Ms. Bragg did not know how to ring up the item." (*Id.* ¶ 9.)  The relevant information here is that Bragg contacted Kellogg about an apparent irregularity.  As Bragg stated in her deposition: "I did not feel right because things are not supposed to be handwritten. So I called for checkers to come up and then I went over and told Jason that I might have done something wrong; that [the price of the vodka] was handwritten." (Creason Decl., Ex. D, Bragg Dep. at 28:19-22, ECF 18-3.)

[3] Although plaintiff indicates the reasons for Bragg's report are disputed, her support for this position has nothing to do with a link between Bragg's actions and plaintiff's age or gender. (ECF 27 ¶ 11.)

[4] Plaintiff does not dispute that Friedman terminated her employment.

1    Defendant's store rules[5] provide: "Employees may not discount merchandise for

2  customers, other employees or themselves without the express approval of the store manager

3  only. Such approval may be exercised only at the time granted." (Schumacher Decl., Ex. D[6] at 3,

4  ECF 26-4.) The rules further provide: "Selling merchandise to fellow employees, friends or

5  customers for less than properly marked or currently advertised prices shall be construed as theft

6  and cause for discharge." (*Id.* at 4.) The rules clearly state: "Violations of store rules and

7  policies shall be deemed sufficient cause for discipline or discharge." (*Id.* at 14.)

8  IV.   ANALYSIS

9    A.    Standard

10    A court will grant summary judgment "if . . . there is no genuine dispute as to any

11  material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

12  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

13  resolved only by a finder of fact because they may reasonably be resolved in favor of either

14  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[7]

15    The moving party bears the initial burden of showing the district court "that there

16  is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

17  477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish

18  that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

19  ───────────────

20    [5] Plaintiff does not dispute the substance of the store rules; rather, plaintiff contends she
   was unaware of their existence and substance. (*See* ECF 27 ¶ 1.) At the motion hearing,
21  plaintiff's counsel was unable to provide support for the contention that a person must be aware
   of the rules in order to be disciplined for violating them.

22    [6] Exhibit D's authenticity is not defeated by the fact that the Schumacher Declaration
   mislabels it as Exhibit C. (*See* Schumacher Decl. ¶ 5, ECF 26.) While such defects may
23  "warrant[] exclusion of the evidence," the decision to exclude evidence in this context is within
   the trial court's discretion. *Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002).
24
    [7] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely
25  on cases decided before the amendment took effect, as "[t]he standard for granting summary
   judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010
26  amendments.

1   *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "[cite] to

2   particular parts of materials in the record [or show] that the materials cited do not establish the

3   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

4   evidence to support that fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

5   ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt

6   as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of

7   *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the

8   governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at

9   247-48.

10          In deciding a motion for summary judgment, the court draws all inferences and

11   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

12   587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

13   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

14   issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

15   *Co.*, 391 U.S. 253, 289 (1968)).

16          B.     Application

17                 1.     Age and Gender Discrimination

18                        a.     FEHA

19          Plaintiff alleges defendant discriminated against her because of her age and

20   gender in violation of the California Fair Employment and Housing Act ("FEHA"), California

21   Government Code § 12940.  (Compl. ¶¶ 40-54.)  Section 12940(a) of FEHA provides that it is

22   unlawful "[f]or an employer, because of . . . sex [or] age . . . to refuse to hire or employ the

23   person or to refuse to select the person for a training program leading to employment, or to bar

24   or to discharge the person from employment or from a training program leading to employment,

25   or to discriminate against the person in compensation or in terms, conditions, or privileges of

26   employment."

"California courts apply the Title VII framework to claims brought under FEHA." *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *see also Wills v. Superior Court*, 195 Cal. App. 4th 143, 159 (2011) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000)). This framework is as follows:[8]

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to defendant 'to articulate some legitimate, nondiscriminatory reasons for the employee's rejection.' [] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)) (internal quotation omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. "'The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent . . . . Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the [asserted] non-discriminatory reasons.'" *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 343 (2008) (quoting *Hersant v. Dept. of Social Servs.*, 57 Cal. App. 4th 997, 1005 (1997)). "To

---

[8] In *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004), the Ninth Circuit stated that "when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [The plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory motive more likely than not motivated [the defendant]." *See also Lahrichi v. Lumera Corp.*, 433 Fed. Appx. 519, 520 (9th Cir. 2011). As will be discussed, plaintiff has proceeded here by using the *McDonnell Douglas* framework.

survive summary judgment, plaintiffs must . . . introduce evidence sufficient to raise a genuine

issue of material fact as to whether the reason the employer articulated is a pretext for

discrimination."  *Roderiguez v. John Muir Med. Ctr.*, No. 09-00731 CW, 2010 U.S. Dist. LEXIS

90056, at *15 (N.D. Cal. Aug. 31, 2010).  "Employees may rely on both circumstantial and

direct evidence . . . ."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1091 (9th Cir. 2008).

    For purposes of this order, the court will assume that plaintiff has met her burden

of establishing a prima facie case and, as defendant has offered a nondiscriminatory reason for

terminating plaintiff's employment, proceed to the third part of the *McDonnell Douglas* analysis.

    Plaintiff maintains that defendant's stated reasons for terminating her employment

were pretextual.  She contends that there is direct evidence of age discrimination; specifically, an

email purportedly sent from Kellogg to Gummert.  (Pl.'s Opp'n at 16.)  Plaintiff contends that

"[s]tarting fresh indicates that Kellogg wanted to hire new and younger employees and 'get rid'

of those employees such as Plaintiff who had many years of seniority and were over the age of

45."  (*Id.*)  Defendant disputes the admissibility of this email for lack of foundation, lack of

authentication, and lack of personal knowledge.  (Def.'s Obj. to Evid. at 3, ECF 44.)  The court

gathers from defendant's evidentiary objections that this email is introduced somewhere in the

Graham Deposition around page 85, however plaintiff has only placed seven pages of the

Graham Deposition on the record, and none past page 71.  (Keister Decl., Ex. E, Graham Dep.,

ECF 30-4.)  Moreover, from the portion cited by defendant where the email is introduced –

"Q: Have you seen either of these e-mails before? A: No." – the email was not authenticated

even with the relevant portions of the deposition.  (Def.'s Obj. to Evid. at 3.)  *See United States*

*v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching

it to an affidavit . . . .  The foundation is laid for receiving a document in evidence by the

testimony of a witness with personal knowledge of the facts who attests to the identity and due

execution of the document and, where appropriate, its delivery."); *see also* FED. R. EVID. 901(a)

(Authentication is satisfied "by evidence sufficient to support a finding that the matter in

question is what its proponent claims.").  This email is inadmissible and will not be considered

by the court.[9]  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550-51

(9th Cir. 1989) ("It is well established that unauthenticated documents cannot be considered on a

motion for summary judgment. To be considered by the court, documents must be authenticated

by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must

be a person through whom the exhibits could be admitted into evidence. A document which

lacks a proper foundation to authenticate cannot be used to support a motion for summary

judgment." (internal quotations and citations omitted)); FED. R. EVID. 901.[10]

---

[9] The court notes plaintiff's statement in her opposition that "Kellogg's September 2009 email . . . was only discovered by Plaintiff after Kellogg's and Gummert's depositions had been taken. Thus, there is no testimony from Gummert, Friedman, or Kellogg about it."  (Pl.'s Opp'n at 7.)  This excuse does not bring the document any closer to being authenticated, nor does plaintiff indicate from whom this email was obtained or how it was discovered.  *See Del Campo v. Am. Corrective Counseling Serv.*, 718 F. Supp. 2d 1116, 1123 n.10 (N.D. Cal. 2010) ("Defendants do not dispute that all the attached documents were provided to Plaintiffs by Defendant . . . during the course of discovery. [] Although 'documents do not automatically become a part of the record simply because they are the product of discovery,' here, Plaintiffs entered the documents into the summary judgment record and attested to their authenticity . . . . Since Defendants do not specify any reason to doubt the authenticity of documents that they themselves produced in discovery, the Court finds the documents properly authenticated under Fed. R. Evid. 901." (internal citations omitted)); *see also Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) ("[T]he facts underlying the affidavit must be of a type that would be admissible as evidence . . . .").  Moreover, although the court recognizes the hearsay issues presented by the email, the court need not reach any hearsay objection, as "authentication or identification [is] a condition precedent to admissibility."  FED. R. EVID. 901(a).

[10] Even if the email were admissible, plaintiff's proposition that it tends to show discriminatory animus is unpersuasive.  Kellogg's email was written five months after plaintiff's termination in response to an email from Gummert to numerous store managers asking if new equipment was needed at their stores; Kellogg's response – "We need 10 more cameras. [] Then I could get rid of the store and start fresh." – could very well indicate that he wanted to start fresh with new equipment.  It does not qualify as direct evidence, defined in this Circuit as "'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'"  *Godwin*, 150 F.3d at 1221 (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)).  If anything, the statement was "a 'stray remark' that [was] 'uttered in an ambivalent manner and [was] not tied directly to [the plaintiff]'s termination,'" and thus insufficient to establish discrimination.  *Id.* (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir. 1990)); *see Montoya v. Time Warner Telecom Holdings, Inc.*, No. 1:08-CV-00227 AWI-DLB, 2009 U.S. Dist. LEXIS 89520, at *26 (E.D. Cal. Sep. 28, 2009) ("'[R]emarks...when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue.'" (quoting *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989))).

1      Plaintiff presents other, circumstantial evidence to show pretext.  She contends

2  that she never received a copy of the store rules, the violation of which formed the alleged basis

3  for her termination from employment.  (Pl.'s Opp'n at 11.)  Moreover, she contends Heather

4  Keep, Head Clerk and witness to Kellogg's suspension of plaintiff, had never heard of the store

5  rules; no one communicated the policy to plaintiff; and the policy regarding markdowns in the

6  liquor department may not have existed.  (*Id*. at 14-15.)[11]

7      "The employer need only articulate, not prove a legitimate, non-discriminatory

8  reason for deciding to terminate the plaintiff."  *Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d

9  996, __, 2011 U.S. Dist. LEXIS 60896, at *21 (E.D. Cal. 2011); *see Villiarimo v. Aloha Island*

10  *Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[C]ourts only require that an employer honestly

11  believed its reasons for its actions, even if its reason is foolish or trivial or even baseless."

12  (internal quotations omitted)).  In order to prevail, plaintiff must present "'specific and

13  substantial'" evidence of pretext.  *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52,

14  69 (2000) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal

15  quotation omitted)); *see also Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1029 n.6

16  (9th Cir. 2006) ("A plaintiff may not defeat a defendant's motion for summary judgment merely

17  by denying the credibility of the defendant's proffered reason for the challenged employment

18  action.").  As explained below, plaintiff has not met her evidentiary burden and no "'reasonable

19  trier of fact could conclude [defendant] engaged in intentional discrimination.'"  *Morgan*, 88

20  /////

21

22  Although the court views evidence in favor of the non-moving party on summary judgment,
   *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004), the court is not required to

23  draw wholly unreasonable inferences.

24      [11] Plaintiff elsewhere contends "the meat and dairy managers were allowed to mark down
   items in their respective departments without store approval."  (Pl.'s Opp'n at 6.)  Defendant

25  counters that there is a fundamental difference between perishable and nonperishable items.
   (Def.'s Reply at 5 n.7.)  Whether this is true is irrelevant to whether plaintiff was terminated due

26  to her age and/or gender.

1  Cal. App. 4th at 75 (quoting *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 806-
2  07 (1999)).

3              Plaintiff's contentions that Heather Keep had never heard of the store rules, no
4  one communicated the policy to plaintiff, and the policy regarding markdowns may not have
5  existed do not establish pretext; the question of whether Heather Keep or plaintiff knew of the
6  store rules is irrelevant; plaintiff has failed to raise a genuine issue of material fact as to the
7  existence of the store policy where defendant has provided the court with a copy of the store
8  rules in effect since at least 1999 (Schumacher Decl. ¶¶ 5, 1, Ex. C).[12]  The question is not what
9  plaintiff knew or thought; the only relevant question is whether defendant's non-discriminatory
10 reason is pretextual.

11             Plaintiff elsewhere contends that the person who took over as Liquor Department
12 Manager was a male who is younger than plaintiff (ECF 27 at ¶ 21); however, this fact alone, if
13 true, would not support an inference of pretext.  *Cf. Cornwell*, 439 F.3d at 1032-33 (supervisor's
14 promoting less experienced white employee to the plaintiff's position could support a reasonable
15 jury's finding of pretext where plaintiff presented admissible evidence of this fact as well as of
16 his exclusion from meetings and demotion); *see also Lindahl v. Air France*, 930 F.2d 1434,
17 1438-39 (9th Cir. 1991) (inquiry does not end at age and gender of replacement; court considers
18 relative qualifications as well).  Here, the "fact" is unsupported.  Plaintiff cites to Kellogg's
19 deposition and Gregory's declaration for support; however, Kellogg's deposition testimony
20 makes clear that while Kellogg considered training a male of unspecified age to take over some
21 of plaintiff's functions, this "was not successful" and defendant "went with something else" after
22 "[trying] a few different people out."  (Keister Decl., Ex. C, Kellogg Dep. 66:23-67:13, ECF 30-

23

24             [12] Plaintiff quotes from Keep's declaration in which she stated "every liquor manager I've
   ever worked with has always–I was told by the previous liquor manager [Cindy Marks] that they
25 had authority to–if they had a damaged product, they had the authority to sell it at 50 percent
   off."  (Pl.'s Opp'n at 6; Keister Decl., Ex. F, Keep Dep. at 31:14-16, ECF 30-5.)  This statement
26 is inadmissible hearsay.  *See* FED. R. EVID. 801.

2.)  Moreover, the Gregory declaration states only that a male in his mid- to late-twenties, without specifying his age or experience, was the current liquor manager at the store as of August 15, 2011, over two years after plaintiff was terminated from her employment.  (Gregory Decl. ¶ 8, ECF 35.)  Likewise, plaintiff's contention that Kellogg did not issue a male employee a warning for putting broken glass in the garbage but issued one to plaintiff for the same conduct does not establish pretext.  (Pl.'s Opp'n at 13.)  This allegation is based wholly on evidence that does not support it, and on hearsay and speculation.  (*See* Keister Decl., Ex. A, Mazalin Dep. at 131:2-19, ECF 31 (testifying that male employee put glass in garbage but not addressing whether Kellogg knew); Gregory Decl. ¶ 7, ECF 35 (Gregory testifying as to what Kellogg was aware of).)[13]

        FEHA does not "'require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'"  *Arteaga*, 163 Cal. App. 4th at 344 (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Plaintiff has failed to show "'that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'"  *Hayden v. Potter*, No. 06CV0923 JAH(NLS), 2010 U.S. Dist. LEXIS 104960, at *17 (S.D. Cal. Sep. 30, 2010) (quoting *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009)).  Specifically, plaintiff has failed to show that defendant's proffered reason is "'internally inconsistent or otherwise not believable.'"  *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)).  Plaintiff's claims for sex and age discrimination thus fail.

---

[13] Defendant's objections are sustained as to paragraph 7 of the Gregory Declaration. (Def.'s Obj. to Evid. at 2, ECF 44.)  "Rule 56 requires the parties to set out facts they will be able to prove at trial. While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *see also Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

1

        b.     Wrongful Discharge

2

        "[W]here a plaintiff's FEHA claim fails, a claim of wrongful discharge in

3

violation of the public policy expressed in FEHA also fails." *Holtzclaw*, 2011 U.S. Dist. LEXIS

4

60896, at *49 (citing *De Horney v. Bank of America Nat'l Trust & Sav. Assoc.*, 879 F.2d 459,

5

465 (9th Cir. 1989)).  Thus, defendant is also entitled to summary judgment on plaintiff's claim

6

for wrongful discharge.

7

        c.     Cat's Paw Liability

8

        Although the court has found plaintiff has failed to carry her burden in

9

establishing pretext, it briefly addresses cat's paw liability as defendant argues that plaintiff's

10

claim cannot be maintained even if it were presented as a cat's paw claim.  (Def.'s Reply at 3.)

11

*See Staub v. Proctor Hosp.*, 562 U.S. __, 131 S. Ct. 1186 (2011).  Although plaintiff neglects to

12

address *Staub v. Proctor Hospital*, she briefly argues that "[t]he fact that Friedman made the

13

final decision does not dispose of Plaintiff's evidence of discrimination" because "Defendant

14

cannot isolate Friedman from the others who harbored discriminatory animus."  (Pl.'s Opp'n at

15

12.)  Relying on a case preceding *Staub* decided by the California Court of Appeals for the Sixth

16

District, *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95 (2004), plaintiff contends that

17

"there are enough facts from which a reasonable jury could infer that Kellogg's discriminatory

18

animus should also be imputed to Friedman."  (*Id.* at 12.)  These "facts" apparently consist of the

19

following: the written warnings plaintiff received after Kellogg became her supervisor;[14] her

20

_____

21

    [14] Plaintiff claims "she was issued some six written warnings for things she either did not do or for which others younger [sic] male employees did not receive similar warnings

22

committing the same acts [sic]."  (Pl.'s Opp'n at 2.)  Three of these warnings, two issued on July 12, 2008 and one issued on March 6, 2009, were signed by Ricardo Grijalva, the assistant

23

manager.  (*See* Keister Decl., Ex. A, Exs. 31, 33, & 44 to Mazalin Dep., ECF 32 at 28, ECF 33 at 1, & ECF 33 at 12.)  Plaintiff appears to cite to the actions of Grijalva and Kellogg

24

interchangeably when it suits her; such evidence is insufficient to survive summary judgment and the court will not impute Grijalva's alleged discriminatory animus to Kellogg and from

25

Kellogg to Friedman.  Relatedly, another of these six warnings was signed by the second assistant manager, Kelly, against whom plaintiff does not make allegations of discriminatory

26

animus.  (Ex. 42 to Mazalin Dep., ECF 33 at 11.)  Another of these six warnings is unsigned.  (Ex. 37 to Mazalin Dep., ECF 33 at 5.)  In fact, only one of these six warnings was signed by

1   contention that Kellogg did not issue a warning to a male employee who put broken glass in the

2   garbage, which the court has already addressed; the fact that two other women over forty were

3   terminated from their employment at the store between March and December 2009;[15] and the fact

4   that plaintiff was replaced by a man, which the court has also addressed.[16]  (*Id.* at 12-13.)  In

5

6   Kellogg; this warning was issued on December 2, 2008 for the incident where plaintiff placed
    broken glass in the wrong place.  (Ex. 39 to Mazalin Dep., ECF 33 at 7.)  As discussed above,
    plaintiff's contentions that this incident shows discriminatory animus because younger, male
7   employees were not disciplined for the same behavior are based on inadmissible hearsay.

8        [15] Although plaintiff relies on the belief of these employees – Kegebein and Kruize – that
    they were discriminated against based on their age and gender, which plaintiff contends can be
9   used to establish a pattern of discrimination, the "evidence" plaintiff provides is not "'relevant to
    the issue of the employer's discriminatory intent.'"  (Pl.'s Opp'n at 13 (quoting *Spulak v. K Mart
10  Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).)  The support plaintiff provides consists of
    conclusory, self-serving, irrelevant statements.  Specifically, Kegebein testifies in her deposition
11  that she thinks older women – specifically, plaintiff and Kruize – were discriminated against; she
    also states her unsupported contention that other employees were not written up while plaintiff
12  was, without discussing, for example, whether Kellogg knew of the conduct of the other
    employees or how she knows they were not written up.  (*See generally* Keister Decl., Ex. I,
13  Kegebein Dep., ECF 30-8.)  Defendant's objections to the Kegebein deposition are sustained.
    (Def.'s Obj. to Evid. at 9.)  Moreover, Kegebein's attached termination letter states simply that
14  she has been terminated due to violation of company policies and/or procedure.  No reasonable
    finder of fact could find discriminatory animus in the evidence presented.  (Kegebein Dep.,
15  Ex. 5.)  Kruize simply states in her declaration that she believes she was discriminated against
    because of her age, gender, and unnamed disability, and lists eight employees including herself
16  who were over the age of forty-five and employed by the store at the time of her termination.
    (Kruize Decl., ECF 36.)  Defendant's objections to the Kruize declaration also are sustained.
17  (Def.'s Obj. to Evid. at 10.)  Kruize was terminated from her employment due to job
    abandonment.  (Caruso Decl., ECF 45.)  Plaintiff's objection to the Caruso declaration is
18  overruled.  (ECF 51.)  Although courts generally will not consider new facts or legal arguments
    raised for the first time in a reply brief, the Caruso declaration is "limited to matters raised in the
19  opposition papers."  *Lerma v. Arends*, No. CIV F-11-0533 LJO/MJS, 2011 U.S. Dist. LEXIS
    66379, at *15 (E.D. Cal. Jun. 22, 2011).  The Caruso declaration is used in defendant's reply to
20  rebut plaintiff's allegations regarding Dawn Kruize's termination not being counted on the list of
    involuntary terminations during Kellogg's tenure as manager and the high number of employees
21  over the age of 45 who were terminated from employment relative to the total number of
    employees over the age of 45.  (*See* Def.'s Reply at 8 nn. 14 & 15.)
22

23       [16] Plaintiff elsewhere contends that Kellogg told her she could not wear a specific pair of
    shoes again but did not approach another female employee approximately ten years younger than
24  plaintiff who was wearing the same shoes.  (Pl.'s Opp'n at 3.)  Plaintiff relies on her deposition
    to support this fact.  (ECF 27 ¶ 13.)  However, plaintiff provides no evidence other than her
25  blanket assertions as to what age the other employee actually was or whether Kellogg knew the
    other employee was wearing these shoes. (Ex. 29 to Mazalin Dep., ECF 32 at 27.)

26  /////

1    *Staub*, the Supreme Court considered when an employer can be held liable for the discriminatory

2    animus of an employee participant in an ostensibly independent investigation resulting in an

3    adverse employment action.  131 S. Ct. at 1194.  The Court held that an employer would be held

4    liable where "a supervisor performs an act with discriminatory animus that is *intended . . .* to

5    cause an adverse employment action, and if that act is a proximate cause of the ultimate

6    employment action . . . ."  *Id.* at 1194 (emphasis in original).  The Court declined to adopt a

7    "hard-and-fast" rule whereby an independent investigation would necessarily absolve an

8    employer of liability for an employee's discriminatory actions; instead, for an employer to be

9    held liable, an employee's discriminatory actions must have proximately caused the alleged

10   adverse employment action, notwithstanding an intervening investigation.  *Id.* at 1193.  Thus,

11   where an adverse employment action is unrelated to another employee's discriminatory actions,

12   no liability attaches.  *Id.*; *see also Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 804

13   (9th Cir.  2009) ("[A]s a matter of law, if the facts show[] that the final decision-maker made a

14   wholly independent, legitimate decision to discharge the plaintiff, uninfluenced by the retaliatory

15   motives of a subordinate," then the subordinate's retaliatory motive cannot be considered a

16   motivating factor.).  The inquiry requires an "'intensely factual' determination of whether the

17   superior never would have made its decision 'but for the [defendant's] retaliatory conduct.'"

18   *Lakeside-Scott*, 556 F.3d at 805 (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 855

19   (9th Cir.1999)); *see also Staub,* 131 S. Ct.  at 1193.  Here, plaintiff has not alleged any

20   _____

21       Plaintiff elsewhere contends that discriminatory animus is evident from the fact that the
     report Gummert prepared of the incident cited to her age and gender.  (Pl.'s Opp'n at 6.)
22   However, it is clear from the attached report that it uses a standard form with preexisting blanks
     for gender and birthdate.  (Keister Decl., Ex. H, ECF 30-7.)

23       In addition, plaintiff contends Kellogg showed discriminatory animus in asking her to
     walk from the back room to the front so that he could time her.  (ECF 27 at ¶ 19.)  Plaintiff
24   refused to do so.  (*Id.*)  This request was made, according to plaintiff, after Grijalva had issued
     her a written warning for failing to respond to a call.  (Keister Decl., Ex. A, Mazalin Dep. at
25   148:14-16.)  Plaintiff would have the court find that a reasonable jury would infer from this
     information that Kellogg was discriminating against her for her age; however, such an inference
26   is unsupported and would be unreasonable.

1    discriminatory conduct, much less a causal link between the alleged discriminatory animus and

2    the employer's decision.

3              2.      Retaliation

4              Defendant contends that plaintiff's claim for retaliation fails both because the

5    facts establish that plaintiff's employment was terminated for a "legitimate, non-discriminatory,

6    non-retaliatory reason" and plaintiff "did not engage in any protected activity of which Safeway

7    management was aware prior to the termination of her employment." (Def.'s Mot. at 16.)

8    Plaintiff contends that the protected activity she engaged in was "opposing each of her written

9    warnings." (Pl.'s Opp'n at 17.)

10             "Section 12940(h) makes it unlawful employment practice for an employer 'to

11   discharge, expel, or otherwise discriminate against any person because the person has opposed

12   any practices forbidden under this part or because the person has filed a complaint, testified, or

13   assisted in any proceeding under this part." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028,

14   1035 (2005). To state a claim for retaliation, plaintiff "'must show that she engaged in protected

15   activity, that she was thereafter subjected to adverse employment action by her employer, and

16   that there was a causal link between the two.'" *Morgan*, 88 Cal. App. 4th at 69 (quoting *Guthrey*

17   *v. State of California*, 63 Cal. App. 4th 1108, 1125 (1998) (internal quotation omitted)). "It is

18   well established that a retaliation claim may be brought by an employee who has complained of

19   or opposed conduct that the employee reasonably believes to be discriminatory . . . ." *Id.* at

20   1043. Although the employee need not explicitly state her reasons for engaging in the activity,

21   the antiretaliation provision is only applicable where "an employer knows that the employee's

22   actions rest on such a basis." *Id.* at 1046. "[C]omplaints about personal grievances or vague or

23   conclusory remarks that fail to put an employer on notice as to what conduct it should investigate

24   will not suffice to establish protected conduct." *Id.* at 1047.

25             Here, plaintiff's opposition to warnings issued against her did not "'read in their

26   totality, oppose discrimination.'" *Yanowitz*, 36 Cal. 4th at 1147 (quoting *Wirtz v. Kansas Farm*

1   *Bureau Services, Inc.*, 274 F. Supp. 2d 1198, 1212 (D.Kan. 2003)).  Plaintiff provides these

2   various warnings and her opposition to them as exhibits, but it appears she relies in particular on

3   one letter she wrote to Jeff Burns, a union representative, on March 8, 2009 to support her claim

4   of retaliation.  (ECF 33 at 14.)  She relies on the following sentence she wrote: "I don't need or

5   deserve this kind of harassment!"  (*Id.*; *see* ECF 27 ¶ 31.)  Plaintiff's responses to defendant's

6   written warnings were made to her union and consist of complaints over being issued the

7   warnings, not discrimination.  (*See* Exs. 32, 36, & 40 to Mazalin Dep., ECF 32 at 29, ECF 33 at

8   3, & ECF 33 at 8; ECF 33 at 14.)[17]  Plaintiff has not shown that defendant was aware of

9   plaintiff's responses.  Plaintiff explicitly stated she did not complain of harassment or

10  discrimination to management or human resources prior to her termination and only complained

11  to her union.  (Keister Decl., Ex. A, Mazalin Dep. at 181:10-182:15, ECF 32.)[18]  Moreover,

12  harassment is a term of art that is not synonymous with discrimination; the fact that plaintiff used

13  this buzzword to the union representative did not put defendant on notice that plaintiff thought

14  defendant's conduct constituted discrimination based on age or gender.

15          Plaintiff cannot show that "but for" having written these oppositions to warnings

16  she would not have been fired.  *See Holtzclaw*, 2011 U.S. Dist. LEXIS 60896, at *46; *Villiarimo*,

17  281 F.3d at 1064 ("To establish causation [in a retaliation case, a plaintiff] must show 'by a

18  preponderance of the evidence that engaging in the protected activity was one of the reasons for

19  [the employee's] firing and but for such activity [the employee] would not have been fired.'"

20  (quoting *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986)).

21  _____

22      [17] Defendant objects to Exhibits 32 and 36 on the ground of hearsay.  (Def.'s Obj. to
    Evid. at 6.)  Defendant's objections are overruled; the contents of these letters "could be
23  presented in an admissible form at trial."  *Fraser,* 342 F.3d at 1037.

24      [18] Plaintiff had refused to sign the written warnings she was issued, but she did not
    complain of discrimination or harassment in her explanations of her refusal to sign.  (*See*
    Mazalin Dep., Exs. 31, 33, 37, 39, 42, 44.)  Defendant objects to Exhibits 31 and 33 on the
25  ground of hearsay.  (Def.'s Obj. to Evid. at 6.)  Defendant's objections are overruled; the
    contents of these handwritten notes "could be presented in an admissible form at trial."  *Fraser,*
26  342 F.3d at 1037.

1    Rather, as discussed at length above, defendant terminated her employment because she violated

2    store policy.

3                    3.        Intentional Infliction of Emotional Distress (IIED)

4                    To state a claim for IIED, plaintiff must allege "(1) extreme and outrageous

5    conduct by [Defendants] with the intention of causing, or reckless disregard of the probability of

6    causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

7    (3) actual and proximate causation of the emotional distress by the defendant's outrageous

8    conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations omitted).  "A defendant's

9    conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in

10   a civilized community' [and] the defendant's conduct must be 'intended to inflict injury or

11   engaged in with the realization that injury will result.'" *Id*. at 1050-51 (quoting *Potter v.*

12   *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).  Liability "does not extend to mere

13   insults, indignities, threats, annoyances, petty oppressions, or other trivialties." *Id*. at 1051

14    (quotation omitted).  However, "[b]ehavior may be considered outrageous if a defendant

15   (1) abuses a relation or position which gives him power to damage the plaintiff's interest;

16   (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally

17   or unreasonably with the recognition that the acts are likely to result in illness through mental

18   distress." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155 n.7 (1987).

19                   Defendant contends that plaintiff's claim for IIED fails because it is preempted by

20   the exclusivity provisions of California's workers' compensation laws.[19]

21                   "[W]hen the employee's [IIED] claim is based on conduct normally occurring in

22   the workplace, it is within the exclusive jurisdiction of the Workers' Compensation Appeals

23   Board." *Cole*, 43 Cal. 3d at 151; *see also Lockheed Martin, Corp. v. Workers' Comp. Appeals*

24

25            [19] The court finds it unnecessary to address defendant's contention that plaintiff's IIED
     claim is also preempted by the Labor-Management Relations Act, 29 U.S.C. § 185, and lacks
26   merit.

1   *Bd.*, 96 Cal. App. 4th 1237, 1247 (2002).  "The cases that have permitted recovery in tort for

2   intentional misconduct causing disability have involved conduct of an employer having a

3   'questionable' relationship to the employment, an injury which did not occur while the employee

4   was performing service incidental to the employment and which would not be viewed as a risk of

5   the employment, or conduct where the employer or insurer stepped out of their proper roles."

6   *Cole*, 43 Cal. 3d at 161.  Thus, IIED claims are preempted by the workers' compensation remedy

7   "unless the alleged conduct violates an express statute or is a violation of fundamental public

8   policy."  *Winter v. Corr. Corp. of Am.*, No. 008cv1718 L(LSP), 2009 U.S. Dist. LEXIS 53668, at

9   *16 (S.D. Cal. Jun. 24, 2009) (citing *Miklosky v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902

10  (2008)).  IIED claims based on discrimination are not preempted.  *See Fretland v. County of*

11  *Humboldt*, 69 Cal. App. 4th 1478, 1492 (1999); *Accardi v. Superior Court*, 17 Cal. App. 4th 341,

12  352-53 (1993).

13          The court has determined that no reasonable factfinder could conclude

14  defendant's termination of plaintiff's employment was discriminatory.  Thus, defendant's

15  conduct of suspending and terminating plaintiff's employment and issuing her written and verbal

16  warnings regarding workplace rules was inarguably a "normal part of the employment

17  relationship covered by the workers' compensation exclusivity provisions."  *Shoemaker v.*

18  *Myers*, 52 Cal. 3d 1, 25 (1990).

19  V.   <u>CONCLUSION</u>

20          For the foregoing reasons, defendant's motion is GRANTED.  This case is

21  CLOSED.

22          IT IS SO ORDERED.

23  DATED:  February 8, 2012.

24  _____
    UNITED STATES DISTRICT JUDGE
25

26